## CHARLES LAUGHLIN, Appellant, v. CITY OF JOPLIN, Respondent.

**Springfield Court of Appeals, January 8, 1912.**

1. **MUNICIPAL CORPORATIONS: Ordinance Regulating Salaries: Interpretation.** In an action against a city by a policeman, who claimed a balance due on salary for several months, the interpretation of the city ordinance was involved. Plaintiff claimed that his prior service on the city police force before he went to work the last time entitled him to an increased compensation. The ordinance providing for the salary of policemen is examined and construed to provide for an increase in compensation for continuous service, subsequent to the passage of the ordinance and that plaintiff's service prior to the passage of the ordinance could not be taken into consideration on re-employment so as to entitle him to the advance in wages.

2. ———: ———: **Misinterpretation Not Binding.** The mere fact that the city council, without any legal authority, allowed the claim of other policemen for back pay, even if the allowance was made under a misinterpretation of the city ordinance covering the salaries of policemen, will not bind or authorize the payment of back pay to another policeman with a similar claim, where the ordinance is not ambiguous and under its terms the payment of such claim would be unauthorized.

3. **CONTRACTS: Construction: Misinterpretation of Parties.** Where a contract is not ambiguous the mere fact that the parties have themselves, by their subsequent conduct or otherwise, placed an erroneous construction upon it, will not prevent the court from giving the true construction.

4. **JUSTICE'S COURT: Appearance: General Issue.** In a case originating in a justice court, the appearance of the defendant operates to raise the general issue under which the plaintiff is required to make out a prima facie case, and the defendant may introduce any evidence tending to show that the cause of action never existed.

161 App.—11

Appeal from Jasper Circuit Court.—*Hon. Joseph D. Perkins,* Judge.

AFFIRMED.

*E. F. Cameron* and *W. J. Owen* for appellant.

(1) This case originated in the justice court, and the defendant made no answer in the justice court or the circuit court. Therefore the pleadings in this case are as though a general denial had been filed. Barr v. Teke, 147 Mo. App. 256. (2) Accord and satisfaction is an affirmative defense and must be pleaded in order to be available as a defense. Trimble v. Railroad, 199 Mo. 44; Bank v. Stewart, 136 Mo. App. 34. (3) Where a contract is ambiguous, the meaning given it by the parties to the contract is entitled to great weight, if not controlling influence in ascertaining the intention of the maker of the contract. St. Louis v. Gas Light Co., 155 Mo. 1; Foster Woolen Co. v. Woolman, 87 Mo. App. 658; Union Depot Co. v. Railroad, 131 Mo. 305; Patterson v. Camden, 25 Mo. 22; St. Louis Light Co. v. St. Louis, 46 Mo. 129; Jones v. De Lassus, 84 Mo. 545; Scott v. Scott, 95 Mo. 318. (4) The construction placed on a statute by officers having in charge the enforcement of the law, such interpretation will have great weight with a court in construing the law. Ross v. Railroad, 111 Mo. 18; State ex rel. v. Railroad, 135 Mo. 648; Union Ins. Co. v. Hoge, 21 Howard, 35; Endlich on Interpretation of Statutes, secs. 83, 360.

*R. A. Pearson* for respondent.

(1) This case having originated in the justice of the peace court, defendant may maintain this defense without filing a written answer. Buxton v. Debrecht, 95 Mo. App. 605. (2) The rule of a party's own construction does not apply where the meaning

is apparent in the language nor is respondent city bound by an erroneous construction. Meisner v. Equipment Co., 211 Mo. 112; Peters v. St. Louis, 226 Mo. 62. (3) But specifically, in the construction of statutory provisions, the settled rule of construction in this state, is that, unless a different intent is evident beyond a reasonable question, they are to be considered as having a prospective operation only. State ex rel. v. Dircks, 211 Mo. 577; Singer Mfg. Co. v. Shull, 74 Mo. App. 486; State ex rel. v. Auditor, 41 Mo. 25; State ex rel. v. Grant, 79 Mo. 113.

NIXON, P. J.—This action was commenced before a justice of the peace of the city of Joplin, and the questions involved arise over the interpretation of an ordinance of said city. Plaintiff for a number of years was a member of the police force of the city of Joplin, and prior to the passage of the ordinance in question received $60 per month for his services.

The ordinance in question, which was approved on April 10, 1907, changed the compensation of members of the police force, and is, so far as material, as follows:

"Section 1. The policemen of the city of Joplin, Missouri, shall receive as compensation for their services the sum of $65 per month for the first six months' services as policeman, and when a policeman has been in the service for six months he shall receive as compensation for his services the sum of $70 per month for the next six months, and when he has been in the employment of the city of Joplin for more than one year as a policeman, he shall receive as compensation the sum of $75 per month. . . .

"Section 3. All the above salaries and compensation of the members of the police force . . . shall be the salaries and compensation of the members of the police force . . . from and after the 17th day of April, 1907.

"Provided, however, that nothing herein shall be so construed as to change the compensation or salary of any officer until the expiration of the term of office for which he shall have been elected or commissioned. . . .

"Section 5. This ordinance shall take effect and be in force from and after its approval and publication."

Prior to the passage of this ordinance, plaintiff had been a member of the police force of the city from April 9, 1901, until April, 1905. He then severed his connection with the police force and remained out of the police service until April 20, 1909, when he was re-employed and served until December 15, 1909, as a police officer, and then finally severed his connection as such.

When he returned to work in April, 1909, the ordinance, which is the basis of this suit, had been in force for two years. Plaintiff demanded his wages at the rate of $75 per month, he having served on the police force for more than one year, claiming that amount was due him under the ordinance, but he was paid at the rate of $65 for the first six months, and at the rate of $70 for the remainder of the time he served in 1909. This suit was instituted to collect the difference,—$72.50. No answer was filed. The parties waived a jury and the justice of the peace found for the plaintiff. Upon appeal, the circuit court sitting as a jury found the issues for the defendant and judgment was entered accordingly. Plaintiff then appealed.

The question presented to us in this case is whether the time a police officer served on the police force of Joplin prior to the passage of the ordinance in question should be counted in determining the salary such police officer should receive provided he was re-employed, or whether he was required to serve a year after the passage of the ordinance in order to

be entitled to receive the benefit of the advance in wages as contemplated by the ordinance.

The plaintiff showed that William F. Gibson served as a police officer of the city of Joplin from April, 1901, until April, 1905, exactly as did the plaintiff, and that he severed his connection as a police officer from April, 1905, until April, 1909, as did the plaintiff; that on April 20, 1909, he and plaintiff commenced work again on the Joplin police force, each receiving $65 per month. Gibson later made application for $10 additional per month from April 20, 1909, and the council allowed his claim. Plaintiff made like application and was refused. The plaintiff also showed that one Davis served on the police force for more than a year prior to April, 1907, and severed his connection about April, 1907, and that when he (Davis) went back on the force in 1910, having been off the force for about three years, he was paid $65 per month but that the council likewise allowed his application, made later on, for the $10 per month back pay. Also, that one Morrison served a year after the passage of the ordinance and then quit for a year or more and when he went to work again in 1910 he was paid at the rate of $65 per month, but that a similar application was made, later on, for the $10 per month back pay, and allowed by the city council.

The question is, Did the city by this ordinance enact that if a man had been a police officer in the service of the city of Joplin for one year or more, no matter when, he should on again entering the service receive $75 per month? Of course such a provision could be made and if made would be upheld. One who has had experience would be a more efficient officer and would render the city better service than a novice, and the city might well place such a premium on experience.

Looking to the ordinance, the provisions as to compensation of police officers appear all in one par-

agraph. Reading the ordinance, there can be no doubt that the first part of it is clearly intended to be prospective because it applies to beginners; then comes the second part—"and when a policeman has been in the service for six months he shall receive as compensation for his services the sum of $70 per month *for the next six months*"—which relates to the man who has worked for the first six months; and then the third part—"and when *he* has been in the employment of the city of Joplin for more than one year as a policeman, he shall receive as compensation the sum of $75 per month." The person referred to by the word "he" is the policeman who served six months at $65 per month and then six months more at $70 per month after the ordinance became effective. The successive clauses of the ordinance must all be construed together. The language employed is plain and unambiguous and is susceptible of but one reasonable construction. The ordinance was approved April 10, 1907, and the evidence shows that in April, 1907, the city administration changed and a new police force was installed. The city by this ordinance did not hold out the premium on experience gained in the past, but on experience attained by continuous service under this ordinance. Before the passage of the ordinance in question, police officers received $65 per month, and the ordinance provided that it should not be so construed as to change the compensation of any officer until the expiration of his term. The apparent object of this ordinance was to induce police officers to remain in the service and thus establish stability in the police department and efficiency as well.

The appellant claims that by accepting employment by virtue of this ordinance a contract was entered into and he seeks to invoke the principle in his favor that when a contract is ambiguous, the interpretation given it by the parties is entitled to great weight, his contention being that the city council by

allowing the application of Gibson for back pay gave
an interpretation of the contract. We have denied
appellant's contention that this ordinance is ambig-
uous, and where the contract is not ambiguous the rule
as to a party's own construction does not apply.
[Meissner v. Railway Equipment Co., 211 Mo. 112, 133,
109 S. W. 730.] And in such a case, the fact that the
parties have themselves by their subsequent conduct
or otherwise, placed an erroneous construction upon
them will not prevent the court from giving the true
construction. [9 Cyc. 588, 589, 590.] But this rule
could not be invoked by the appellant because the con-
tract construed was between the city and other par-
ties and not between the city and appellant.

The further contention is made that the construc-
tion placed upon an ordinance by officers having its
enforcement in charge will have great weight with a
court in construing its provisions and that the city
council by allowing the application of Gibson for back
pay placed a construction upon the ordinance the ben-
efit of which should extend to plaintiff's claim. We
recognize the force of the argument that the city
should treat all of its employees rendering like serv-
ices on the police force alike. But we have held that
the ordinance is plain and unambiguous in itself.
Hence there is no cause to look beyond its terms for
its meaning. [36 Cyc. 1106.] Where the amount of a
police officer's compensation has been fixed by legal
authority, that is the compensation, no more and no
less, that he is entitled to receive. [28 Cyc. 528.] And
the fact that the city council without any legal author-
ity chose to allow Gibson's claim for back pay can-
not bind the city authorities to pay the appellant a
greater compensation than allowed by its ordinance.

This case arose in a justice's court and no writ-
ten answer was filed therein or in the circuit court.
Appellant in his brief makes the contention that "Ac-
cord and satisfaction is an affirmative defense and

must be pleaded in order to be available." The city made no claim of accord and satisfaction. Plaintiff in his petition stated that he had already received from the city for his services $65 per month for six months and $70 per month for six weeks, and he only asked judgment for the further sum of $10 per month for the six months and for $5 per month for the six weeks, making, in all, $72.50. The city made no contention that it had paid this amount. It merely denied liability, and this it could do under a general denial. The appearance of the defendant in a case originating in a justice's court operates to raise the general issue and the case stands as though the defendant had answered by a general denial. [Schmidt v. Rozier, 121 Mo. App. l. c. 310, 98 S. W. 791; Barr v. Lake, 147 Mo. App. l. c. 256, and cases cited.] Under the general issue, the plaintiff was required to make out a prima facie case, and the defendant could introduce any evidence tending to show that the cause of action never existed. [Scudder v. Atwood, 55 Mo. App. 621; Jones v. Rush, 156 Mo. 364, 57 S. W. 118.]

It follows from what has been said that the judgment should be affirmed, and it is so ordered. All concur.